# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-16-00859-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Victor Manuel Ramirez Jr., | |
| Defendant. | |

At issue is Defendant Victor Manuel Ramirez Jr.'s Motion to Suppress Evidence (Doc. 32, Mot. to Suppress), to which the Government filed a Response (Doc. 36, Resp.). The Court held an evidentiary hearing on May 2, 2017 (Doc. 40), and requested additional briefing from the parties, which was filed on May 5, 2017 (Doc. 46, Def.'s Supp. Br.; Doc. 47, Gov.'s Supp. Br.).

## I. BACKGROUND

Based on the parties' filings and the evidentiary hearing, which included testimony from United States Border Patrol Agents Marshall Nelson and Jorge Zerega, and Defendant, the record shows as follows: on June 14, 2016, Defendant was driving a distinctive Chevrolet S-10 pickup truck with an unusual paint combination—a white passenger cab and navy blue cargo bed—through the Mexico-United States Border Patrol checkpoint at mile marker 17 on Interstate-8, 15 miles east of Yuma, Arizona. At the checkpoint, Agent Nelson spoke to Defendant, who stated that he was new to the area and driving around to familiarize himself with his surroundings. Defendant was then

referred for secondary inspection after a narcotic scent detection dog alerted to the truck. Agents searched Defendant's truck but did not find any contraband. In the course of the search, though, Agent Nelson noticed that the center console in the vehicle had been replaced with a model typically associated with a Chevrolet Blazer.

On the following day, June 15, 2016, Border Patrol Agents Nelson and Pedro Lepe were surveilling the Dome Valley area in southwest Arizona, east of Yuma. Dome Valley is a closed system with only one entrance and one exit, and the agents were stationed at opposite ends about 20 minutes apart. At or about 11:00 a.m., Agent Lepe was surveilling traffic at the intersection of East County 4th Street and South Avenue 16 E and observed a blue and white Chevrolet S-10 pickup truck entering Dome Valley and traveling towards Agent Nelson. Agent Lepe radioed Agent Nelson and alerted him to the vehicle's presence. About 20 minutes later, Agent Nelson observed the truck coming out of the east end of Dome Valley driving south on Avenue 20 E towards Old Highway 80 and recognized it from the previous day's encounter at the Interstate-8 Border Patrol checkpoint.

Agent Nelson followed the truck and ran the license plate number—which was registered in California—through various databases, revealing that the truck had entered the United States from Mexico twice in the preceding 72 hours through the Andrade Port of Entry in California. Agent Nelson continued to follow the truck through Dome Valley to Old Highway 80, where it proceeded eastbound to a sparsely populated, but acceisble public highway used mainly by agricultural vehicles accessing local farms. The lesser-travelled route consists of county roads with narrow single lanes in each direction, speed limits ranging from 25 to 45 miles per hour, stop signs, and multiple turns—as opposed to Interstate-8, a better maintained, multi-lane highway, with speed limits at or above 65 miles per hour. Travelling this route, the truck continued to Interstate-8 without passing the Border Patrol checkpoint. Agent Nelson then stopped the truck to investigate.

Approaching the truck, Agent Nelson recognized Defendant—the sole apparent occupant—as the same driver he interacted with the previous day. When asked,

Defendant stated that he was traveling from Yuma to the Desert Sky Mall in Phoenix. Agent Nelson then inquired about Defendant's circuitous route, which bypassed the Border Patrol checkpoint and added time to his drive. Initially, Defendant said that he traveled through Dome Valley to avoid the Border Patrol checkpoint because he felt he had been harassed the day before. Defendant then stated that he was only following his phone's navigation application instructions. After hearing the conflicting answers, Agent Nelson conducted a records check, which revealed Defendant's extensive criminal history, including gang activity. At or around 11:30 a.m., Agent Lepe requested a canine unit to conduct an exterior sniff of the vehicle. By approximately 11:45 a.m., the canine unit arrived and conducted an exterior sniff, alerting to the passenger side door of the truck. The agents then searched the vehicle and found a backpack in the passenger seat containing 2.95 kilograms of methamphetamine. Border Patrol agents then arrested Defendant and transported him for processing.

**II.     ANALYSIS**

Defendant seeks to exclude the evidence obtained as a result of the Government's search of his vehicle—namely the narcotic-filled backpack—on three bases: (1) the Border Patrol is not statutorily or constitutionally authorized to stop and search based only on suspicion of illegal narcotics; (2) the initial stop was without reasonable suspicion or probable cause; and (3) even assuming the initial stop was justified, there was neither reasonable suspicion nor probable cause to detain Defendant or to eventually search the vehicle. (Mot. to Suppress at 4-17.)

**A.     Border Patrol Authority**

Defendant first argues that the Border Patrol lacks authority to effectuate a stop to search for drugs, or any contraband other than illegal aliens. (Mot. to Suppress at 4-11.) The Government responds that the Border Patrol may make brief investigatory stops and is empowered by Congress to make arrests for felonies under the laws of the United States. (Resp. at 4-5 (citing *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013); 8 U.S.C. § 1357(a)(5)(B)).)

As federal officers, Border Patrol agents are limited to their statutory powers. *Ortiz v. U.S. Border Patrol*, 39 F. Supp. 2d 1321, 1326 (D.N.M. 1999) ("Border Patrol agents are not general law enforcement officers. Instead, . . . their authority and duties are circumscribed by statute and limited in scope."); *see also United States v. Santa Maria*, 15 F.3d 879 (9th Cir. 1994). "To hold otherwise would grant Border Patrol agents unfettered discretion to investigate suspected violations of any and all cognizable criminal laws" and "would, in effect, give to the Border Patrol the general police power that the Constitution reserves to the States." *United States v. Perkins*, 166 F. Supp. 2d 1116, 1126 (W.D. Tex. 2001), *aff'd*, 352 F.3d 198 (5th Cir. 2003).

Border Patrol agents, however, have the power to investigate and enforce criminal law, including the ability to "board and search for aliens any vessel . . . within a distance of twenty-five miles from any [] external boundary." 8 U.S.C. § 1357. Further, courts—including in this circuit—have held that 19 U.S.C. §§ 482 and 1581 represent special delegations of authority to customs officials to conduct border searches and that authority extends to immigration officials. *See United States v. Whiting*, 781 F.2d 692, 696 (9th Cir. 1986) ("This court has upheld warrantless border searches conducted by [Customs Services], Border Patrol, and [the] Coast Guard."); *United States v. Thompson*, 475 F.2d 1359, 1361-63 (5th Cir. 1973) (holding that while Border Patrol agents could not have searched a plastic bag that was too small to have contained aliens, such agents were entitled to assume their role as special customs agents once the search resulted in reasonable suspicion for the presence of drugs in violation of customs laws). Further, "Congress intended to afford customs officers great latitude in conducting a search at an international border crossing." *Klein v. United States*, 472 F.2d 847, 849 (9th Cir. 1973); *see also United States v. McDaniel*, 463 F.2d 129 (5th Cir. 1972) (Border Patrol agents wear "two hats," one as an immigration officer and the other as a customs officer).

Thus, Border Patrol Agents may conduct "brief investigatory stops . . . if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Valdes-Vega*, 738 F.3d at 1078. Accordingly, Defendant's first argument is

without merit.[1] The Border Patrol acted within its authority, regardless of whether the agents' suspicion was based on alien, narcotic, or some other illegal bases.[2] *See Perkins*, 177 F. Supp. 2d at 579 ("The Border Patrol's warrantless arrest authority in drug cases, such as this one, is derived from Title 21, not Title 8. There is no indication that Congress meant to limit cross-designated agents' arrest powers to instances when they are performing duties relating to the enforcement of immigration laws, and Title 8's limitation should not be read into Title 21.").

### B. Reasonable Suspicion of Initial Stop

Defendant next argues that even if the Border Patrol is authorized to conduct such seizure, reasonable suspicion did not support the initial stop. (Mot. to Suppress at 11-14.) The Government responds that each relevant factor weighs in favor of finding reasonable suspicion, rendering the stop constitutionally valid. (Resp. at 7.)

It is well settled that a vehicular stop is a seizure within the meaning of the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996). The Ninth Circuit has held, in the context of an investigatory traffic stop, that an officer need only have reasonable suspicion to justify the seizure. *See United States v. Lopez–Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000) (concluding that *Whren* did not alter the law that reasonable suspicion is enough to support an investigatory traffic stop under the Fourth Amendment); *Chavez v. U.S.*, 683 F.3d 1102, 1111 (9th Cir. 2012) ("[T]he Fourth Amendment prohibits an officer on roving patrol near the border from stopping a vehicle in the absence of an objectively 'reasonable suspicion' that the 'particular vehicle may contain aliens who are illegally in the country' or is involved in some other criminal

---

[1] Defendant relies heavily on *Santa Maria*, 15 F.3d 879, which dealt with a search of a residence and where the court explicitly noted that its decision differs from those considering the reach of 8 U.S.C. § 1357(a)(3) in automobile searches at the border or its functional equivalent.

[2] Even were the Court to find otherwise, suppression would not be the appropriate remedy. *See United States v. Roberts*, 282 F. App'x 561, 563 (9th Cir. 2008) (noting that though the record remained devoid of any evidence that the Border Patrol agents were cross-designated to enforce federal narcotics laws while engaged in non-immigration activities, "the suppression remedy is not available") (citing *United States v. Harrington*, 681 F.2d 612, 615 (9th Cir. 1982)).

- 5 -

conduct.") (citation omitted). Reasonable suspicion requires "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996). In assessing the legality of an investigative stop, courts must consider the "totality of the circumstances." *United States v. Cortez,* 449 U.S. 411, 417 (1981). This includes "[a]ll relevant factors . . . even those [] that, in a different context, might be entirely innocuous." *United States v. Fernandez–Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2003) (citations omitted). "Reasonable suspicion . . . can arise from information different in quality and content and even less reliable than that required for the establishment of probable cause." *United States v. Mattarolo*, 209 F.3d 1153, 1157 (9th Cir. 2000) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)); *see also United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000) ("The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence, and less than probable cause.") (citation omitted).

In the context of Border Patrol stops, the factors to be considered in determining whether "reasonable suspicion" exists to justify stopping a vehicle include, but are not limited to: "1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien or drug smuggling in the area; 5) behavior of the driver, including 'obvious attempts to evade officers;' 6) appearance or behavior of passengers; 7) model and appearance of the vehicle; and 8) officer experience." *United States v. Garcia–Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 885 (1975)).

Defendant argues that the agents did not indicate a traffic infraction or evasive maneuvering, failed to note any nervous or evasive behavior, were provided no tips or other information relevant to the vehicle or the owner, and did not observe that the vehicle was overly loaded, thereby eliminating any reasonable suspicion for a stop. (Mot. to Suppress at 2.) Moreover, Defendant argues that the various databases searched found that the vehicle was properly registered and Defendant licensed in California. (Mot. to

Suppress at 2.) Each of Defendant's points is true. *But see United States v. Alleva*, No. CR 07-508-TUC-DCB(BPV), 2007 WL 1672663, at *4 (D. Ariz. June 8, 2007) (noting that Border Patrol agent recognized the vehicle as non-local, contributing to reasonable suspicion). Nevertheless, the factors to be considered in this context constitute reasonable suspicion.

As for the first factor, the uncontroverted testimony is that the alternate route Defendant took is travelled primarily, if not exclusively, by farming vehicles and equipment. Indeed, a satellite photograph of Dome Valley offered at the evidentiary hearing made clear the only businesses or locations in the area are farm fields. Defendant's truck was not generally equipped for the terrain, and had in fact been "lowered," making it even less viable for such use. Additionally, Agent Nelson testified that the time from when Agent Lepe saw Defendant's truck enter Dome Valley from the west end to the time Agent Nelson saw the truck approach the east end of Dome Valley, was about 20 minutes. Agent Nelson indicated that is the amount of time it would take a vehicle to travel from where Agent Lepe was stationed to where Agent Nelson was, without stopping. Thus, Agent Nelson was aware the truck driving the route did not stop or perform work at any of the farms. *See United States v. Arvizu*, 534 U.S. 266 (2002) (officer properly took into account that defendant "had set out for [his destination] along a little-traveled route used by smugglers to avoid" the Border Patrol checkpoint); *Tiong*, 224 F.3d 1136 (defendant said he was driving to Seattle but instead turned onto a country road without restaurants, gas stations, etc., with no plausible innocent explanation); *United States v. Bailey*, 327 F.3d 1131 (10th Cir. 2003) ("this particular section of highway is a common route for smuggling undocumented immigrants and illegal drugs"). Regarding the second factor, the Dome Valley area is unquestionably in close proximity to the border. As to the third factor, there is no evidence that similar travelers use the route or that traffic during that time or in general would make it beneficial to circumvent Interstate-8 and the Border Patrol checkpoint. *United States v. Jacquinot*, 258 F.3d 423 (5th Cir. 2001) (it is significant "that Highway 385 has a reputation as a smuggling

route," and that the vehicle's presence constituted "a deviation from the typical traffic patterns"). Indeed, the route would add approximately 40 minutes to Defendant's travel. Concerning the fourth factor, Agent Nelson testified that the area is so commonly used by narcotics and human smugglers that Border Patrol agents are specifically assigned to that portion of the road to patrol for those activities. *See United States v. Palos-Marquez*, 591 F.3d 1272 (9th Cir. 2010) (area "notorious . . . for alien traffic"); *United States v. Rodriguez*, 564 F.3d 735 (5th Cir. 2009) (noting "the road's status as a recognized corridor for narcotics and illegal alien smuggling").

Evaluating the fifth and sixth factors, while Defendant did not obviously attempt to evade Agent Nelson once followed, or otherwise exhibit suspicious behavior, the route itself was used to avoid Border Patrol interaction or interdiction. Regarding the seventh factor, the model and appearance of the truck exhibited inadequateness for the terrain, as noted above, and inconspicuous modification—which may signal either drug or alien smuggling capabilities. *United States v. Rocha-Lopez*, 527 F.2d 476, 478 (9th Cir. 1975) (noting that modifications such as a hidden compartment can raise reasonable suspicion of either alien or narcotic smuggling).

Finally, as to the eighth factor, Agent Nelson—who had knowledge of the preceding factors based on 11 years in the agency, extensive training, and fulsome experience—also had specific knowledge of and experience with Defendant. Not only had the truck crossed the Border Patrol checkpoint the day before, but a drug scent canine had alerted to the truck. As both Agents Nelson and Zerega testified, and other courts have found, drug detection canines may alert to the odor of a substance that was previously present but has been removed. (Doc. 40 ("I can't say [the canine] has been wrong, because every time he's alerted, if nothing is found . . . we haven't been able to establish whether there was something in the vehicle previously.").); *see also Florida v. Harris*, 568 U.S. 237 (2013) ("The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person.")

(citing U.S. Dept. of Army, Military Working Dog Program 30 (Pamphlet 190-12, 1993); S. Bryson, Police Dog Tactics 257 (2d ed. 2000)); *United States v. Green*, No. 7:11CR00057, 2012 WL 2924055, at *2 (W.D. Va. June 28, 2012), *aff'd*, 740 F.3d 275 (4th Cir. 2014) (denying similarly postured and factually analogous motion to suppress).

Despite these factors, Defendant argues that the purpose of the investigative stop is unclear. (Def.'s Supp. Br. at 6.) As stated, reasonable suspicion that criminal activity may have been afoot existed based on Agent Nelson's experience and the factors above. *See Ornelas v. United States.*, 517 U.S. 690, 700 (1996) (officer may draw inferences based on experience; veteran officer, who had searched roughly 2,000 cars, could see loose car panel as evidence of hidden drugs); *Brignoni-Ponce*, 422 U.S. at 884-85 (officer with experience in detecting illegal entry and smuggling may draw reasonable suspicion of smuggling of illegal aliens from proximity to border, patterns of traffic, erratic driving, type of vehicle, and appearance of vehicle and occupants). Defendant also argues that the previous day's encounter cannot serve as reasonable suspicion as Agent Nelson saw nothing "new." (Def.'s Supp. Br. at 7.) But Agent Nelson did observe something different—a complete avoidance of the Border Patrol checkpoint. While avoidance of a checkpoint, without more, is likely insufficient to constitute reasonable suspicion necessary to justify a temporary vehicle detention, *United States v. Ogilvie*, 527 F.2d 330 (9th Cir. 1975), it establishes such suspicion in conjunction with the particularized factors articulated by Agent Nelson and the Government. Agent Nelson's previous observations were not extinguished and remained relevant to the reasonableness of his suspicion. *See United States v. Hawkes*, No. CR09-2235-TUC-RCC-CRP, 2010 WL 2079912 (D. Ariz. Apr. 1, 2010), *report and recommendation adopted*, No. CR09-2235-TUC-RCCCRP, 2010 WL 2079908 (D. Ariz. May 21, 2010) (denying motion to suppress after finding that Border Patrol agent had requisite suspicion to support the stop of defendant's vehicle based partially on the well-known smuggling route the vehicle travelled and that the defendant and vehicle had prior encounters at the checkpoint, including one in which a canine alerted to the vehicle but no drugs found); *see also Arvizu*, 534 U.S. at 277

(reasonable suspicion to stop vehicle because Border Patrol agent inferred from his observations, registration check, and experience that defendant was avoiding Border Patrol agents). Upon an evaluation of the totality of these factors, the Court finds that the Border Patrol had reasonable suspicion to stop Defendant.

### C. Continued Detention and Vehicle Search

Defendant argues, in the alternative, that the agents were not permitted to continue the detention of Defendant and his vehicle once they were satisfied that he was not transporting human contraband and that, in any event, no probable cause existed to justify the search. (Mot. to Suppress at 14-17.) The Government responds that Border Patrol needed only reasonable suspicion to detain Defendant for a reasonable amount of time and that once the canine alerted, probable cause existed to search the truck. (Resp. at 7-8.)

To determine whether a detention is longer than justified under the circumstances, "it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). The record shows that the wait for the canine unit prolonged the stop by 15 minutes. As to the reasonableness of a stop less than an hour, the agents testified that a certified canine was needed to complete their investigation into whether Defendant was involved in illegal drug activity—which is within their purview.

While the canine unit's arrival took some time, there is nothing to suggest that the agents did anything less than assiduously investigate their suspicions to swiftly confirm or dispel the presence of illegal activity. *Sharpe*, 470 U.S. at 676; *see also United States v. Mason*, 345 Fed. App'x 303 (9th Cir. 2009); (Doc. 40 (testifying that Agent Zerega's location when he received the call—milepost 17—was "between five and ten minutes" from Defendant's location by car and that "[he] wasn't working [his] dog at the time, [he] was inside just monitoring traffic. So [he] was able to respond fairly quickly").) While there is no bright line rule as to how long is too long, the Ninth Circuit has found delays of both less and more time reasonable. *See, e.g.*, *United States v. Macias-Encinas*, 291

Fed. App'x 59, 60 (9th Cir. 2008) (finding 45 minute detention reasonable); *United States v. Mondello*, 927 F.2d 1463 (9th Cir. 1991) (finding 30 minute investigatory stop and 90 minute additional delay after canine alert reasonable). Thus, the Court finds the continued detention reasonable.

Defendant nonetheless argues that by detaining him in the fashion and for the duration that the agents did, they effectively arrested him, which required probable cause. (Mot. to Suppress at 14.) The Court disagrees. For such an investigatory detention—rather than those associated with a traffic infraction, as Defendant cites—law enforcement need only reasonable suspicion. *See United States v. Sokolow*, 490 U.S. 1, 2 (1989). As already stated, Agent Nelson had such suspicion here. Though unnecessary, such rational suspicion was only bolstered by Defendant's conflicting and partially implausible explanation regarding his route. While Defendant argues that the inconsistencies he provided were "mild to say the least" (Def.'s Supp. Br. at 7), the Court also disagrees. Agent Nelson was called upon to reconcile one possibly reasonable personal decision with an implausible technology-based direction. Defendant similarly provides "innocent" explanations for many of the factors providing reasonable suspicion and probable cause (*see* Def.'s Supp. Br. at 11), which are not for the Court to consider. Instead, the Court analyzes what the Border Patrol agents knew—taken together—at the time they initiated the stop, waited for the canine unit, and searched the vehicle. *Ornelas*, 517 U.S. at 701 ("a court must identify all of the relevant historical facts known to the officer at the time of the stop or search").

Finally, Defendant argues that nothing occurred during the investigatory stop to provide probable cause to allow a full vehicle search. (Def.'s Supp. Br. at 8.) However, once the trained and certified canine alerted to Defendant's vehicle, the agents had probable cause to search. *See Harris*, 568 U.S. 237. Agent Zerega—who had 11 years' experience in the agency and over eight years in the canine unit—testified that both he and his canine partner were certified yearly, always exhibiting proficiency above that which the agency requires. Whatever general canine fallibility that Defendant argues

negates such probable cause (Mot. to Suppress at 14-15), has no basis in law. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (noting drug scent canine's fallibility but nonetheless finding that defendant was not unnecessarily prolonged and that the dog alert was sufficiently reliable to provide probable cause).

### III. CONCLUSION

The Border Patrol was within its statutorily and constitutionally granted authority in stopping Defendant based on suspicion of smuggling either illegal narcotics or illegal aliens. Moreover, based on Agent Nelson's knowledge and experience, he had ample reasonable suspicion to effectuate an investigatory stop—including Defendant's indirect travel through an area he had no reason to traverse, his avoidance of the Border Patrol checkpoint, his ill-equipped vehicle and the alterations thereto, the vehicle's recent border crossings, and the canine alert and search occurring the previous day. Each of these particularized factors were identified and articulated by Agent Nelson and the inferences drawn therefrom were rational. The short delay for the canine unit to arrive was reasonable under the circumstances—particularly given Defendant's inconsistent explanations—and the subsequent alert provided probable cause to search the vehicle for the narcotics ultimately found.

**IT IS THEREFORE ORDERED** denying Defendant Victor Manuel Ramirez's Motion to Suppress Evidence (Doc. 32).

Dated this 31st day of May, 2017.

_____
Honorable John J. Tuchi
United States District Judge